**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES DEPARTMENT**
**OF JUSTICE, TAX DIVISION; and**
**UNITED STATES OF AMERICA,**

                                    **Appellants,**

                    **v.**                                            **1:06-CV-763**
                                                                           **(FJS)**

**PAUL S. HUDSON,**

                                    **Appellee.**
_____

**APPEARANCES**                              **OF COUNSEL**

**UNITED STATES DEPARTMENT**          **BARTHOLOMEW CIRENZA, ESQ.**
**OF JUSTICE**
555 Fourth Street, N.W.
Room 7814
Washington, D.C. 20001
Attorneys for Appellants

**PAUL S. HUDSON**
Sarasota, Florida 34233
Appellee _pro se_

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        On May 16, 2006, the Bankruptcy Court, Judge Robert E. Littlefield, Jr. presiding, issued

a Memorandum-Decision and Order that, in part, (1) reaffirmed the Bankruptcy Court's earlier

decision that a Stipulation of Settlement in a related case limited Mr. Hudson's total liability as

debtor to the IRS to $30,838.49, effectively foreclosing liability for additional interest, and (2)

awarded Mr. Hudson attorney fees as a prevailing litigant.  Currently before the Court is the

Government's appeal from the Bankruptcy Court's decision.

## II. BACKGROUND

Mr. Hudson and his wife, Eleanor Hudson, were principals in a business known as Kent

& Haroldsen Associates, Inc.  When that corporation filed for bankruptcy, the IRS sought to

recover delinquent employment taxes (referred to as the "trust fund portion") from the

corporation's bankruptcy assets.  Therefore, in the Kent & Haroldsen Chapter 7 case ("the

corporate case"), the parties entered a Stipulation of Settlement fixing the liability of both the

corporation and the principals.[1]  AUSA Diane Cagino signed the Stipulation of Settlement for the

Government, and the Hudsons' attorney and the Chapter 7 Trustee also signed.  The final

provision of the Stipulation of Settlement stated that "[t]he total Trust Fund portion of said tax

will be $30,838.49.  The total liability of Eleanor and Paul Hudson shall be the trust fund

portion."  *See* Dkt. No. 8 at Pt. 1 at 5.

In another proceeding in district court, Mrs. Hudson challenged the tax assessment and

liens that the IRS had filed against her to recover the trust fund portion plus a statutory interest

penalty.  Mrs. Hudson's estate and the Government filed cross-motions seeking respectively

either to reverse or to affirm the Government's decision to collect the interest penalty despite the

provision of the corporate case's Stipulation of Settlement.  Ruling on the pleadings, Judge

Thomas J. McAvoy determined that this provision was unambiguous and, "by its plain meaning,

---

[1] Pursuant to 26 U.S.C. § 6672, the IRS is not limited to recovering the trust fund portion from the business' assets; it can also recover the trust fund portion from certain responsible officers.  Therefore, the IRS filed claims against both Mr. and Mrs. Hudson, individually.

include[d] both the penalty and any accrued interest." *See Hudson v. IRS*, 1:03-CV-172, at Dkt. No. 24 at 20-21 (citations and footnotes omitted).  Moreover, Judge McAvoy applied the maxim *expressio unius est exclusio alterius* in noting that a provision related to the corporation's liability stated an amount due and explicitly stated "not counting penalty or interest."  *See id.* at 22 (citations omitted).  In contrast, the provision related to the Hudsons' liability did not state that it excluded penalty or interest.  Finding that there was no need to resort to extrinsic evidence to construe the terms of the Stipulation of Settlement pursuant to the parol evidence rule, Judge McAvoy denied the IRS' attempt to collect additional interest from Mrs. Hudson's estate.  *See id.* at 21.

In the current bankruptcy case involving Mr. Hudson, the Government has repeatedly sought additional interest.  First, on September 7, 2004, the Bankruptcy Court found that, due to the doctrine of collateral estoppel, Judge McAvoy's decision precluded the Government from seeking additional interest from Mr. Hudson.  *See* Dkt. No. 4 at Pt. 9 at 2-3 (quotation omitted). Second, on November 30, 2004, the Bankruptcy Court ruled on the Government's motion for reconsideration of this decision.  Upon reconsideration, the Bankruptcy Court determined that collateral estoppel did not apply based on the Government's arguments that mutuality of parties was lacking between Mrs. Hudson's tax case and Mr. Hudson's bankruptcy case and that Judge McAvoy's decision was not final.[2]  Nevertheless, the Bankruptcy Court ultimately adopted Judge McAvoy's analysis in reaching the conclusion that the Stipulation of Settlement in the corporate case was unambiguous and precluded the Government from recovering additional interest from

---

[2] Although Mr. Hudson was the attorney of record and his son was Mrs. Hudson's personal representative, Mr. Hudson was not technically a party in Mrs. Hudson's tax case.

the Hudsons.  *See* Dkt. No. 4 at Pt. 15 at 3-4.

Finally, on May 16, 2006, the Bankruptcy Court decided the parties' competing motions for summary judgment.  As an initial matter, it reaffirmed its earlier decisions to limit Mr. Hudson's liability to the amount stated in the corporate case's Stipulation of Settlement, thereby precluding the Government from collecting additional interest.  The Bankruptcy Court then denied Mr. Hudson's request for additional credits or offsets against the Government's claim.  In addition, the Bankruptcy Court considered Mr. Hudson's request for an award of attorney's fees as a prevailing party despite the fact that he is a *pro se* litigant.  Noting that the Second Circuit had not ruled on the issue and considering a division among the other Circuits, the Bankruptcy Court adopted the reasoning of the Fifth Circuit in *Cazalas v. United States Dep't of Justice*, 709 F.2d 1051 (5th Cir. 1983), and found that awarding attorney's fees to *pro se* litigants encourages "vigorous advocacy" and that the amount of fees can be determined by considering the value of the work foregone by the litigant.  *See* Dkt. No. 1 at Pt. 1 at 9-10.  Therefore, pursuant to 26 U.S.C. § 7430, the Bankruptcy Court awarded Mr. Hudson attorney's fees because the Government did not meet its burden to "establish that its position was substantially justified." *See id.* at 10-13.

The Government appeals aspects of the Bankruptcy Court's May 16, 2006 Memorandum-Decision and Order which preclude it from collecting additional interest and award attorney's fees to Mr. Hudson.

## III. DISCUSSION

**A.      Collateral Estoppel**

As noted above, the Bankruptcy Court originally applied the doctrine of collateral estoppel to preclude the Government from seeking additional interest beyond the amount stated in the corporate case's Stipulation of Settlement based on Judge McAvoy's decision in the tax case. Although the parties have not briefed the issue of collateral estoppel on appeal, they did litigate the issue before the Bankruptcy Court. Therefore, the Court finds that it is appropriate to consider this issue.[3]

Federal principles of collateral estoppel apply to determine the preclusive effect of a prior federal judgment. *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quotation omitted). District courts have broad discretion to determine in which situations collateral estoppel should apply. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979) (footnote omitted). Moreover, federal courts no longer require strict mutuality of parties. *See Allen v. McCurry*, 449 U.S. 90, 94-95 (1980) (citations omitted). Therefore, a non-party in the initial proceeding can raise collateral estoppel in a later proceeding to preclude a party in the first proceeding from re-litigating the same issue. *See id.* at 95.

Collateral estoppel requires four elements: (1) that the identical issue was raised in the first proceeding; (2) that the issue was actually litigated and decided; (3) that the party to be precluded had a full and fair opportunity to litigate the issue; and (4) that resolution of the issue was necessary to support a final judgment. *See Ball*, 451 F.3d at 69 (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003)).

---

[3] A review of collateral estoppel jurisprudence indicates that a court has wide discretion to consider collateral estoppel at various stages of litigation. For instance, a court can raise collateral estoppel *sua sponte*. *See Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (quotation and other citations omitted). Federal courts have also raised collateral estoppel for the first time on appeal. *See Clements v. Airport Auth.*, 69 F.3d 321, 329-30 (9th Cir. 1995).

In this case, before the Bankruptcy Court, the Government did not dispute that the first two elements of collateral estoppel have been satisfied. In addition, as noted above, federal courts have abrogated the mutuality requirement. *See Allen*, 449 U.S. at 94-95 (citations omitted). Therefore, the Court need only determine two issues: (1) whether the Government had a full and fair opportunity to litigate the interest issue before Judge McAvoy, and (2) whether Judge McAvoy's decision qualifies as a final judgment.

### 1. Did the Government have a full and fair opportunity to litigate the interest issue before Judge McAvoy?

The Government argues that it did not have a full and fair opportunity to litigate the interest issue before Judge McAvoy. In support of this argument, it asserts that Judge McAvoy's decision in Mrs. Hudson's tax case was based on a "procedural anomaly" and that Judge McAvoy wrongly refused to consider relevant documents not contained in the pleadings.[4] The alleged "procedural anomaly" arose when the Government filed a motion for an order affirming its determination that it could collect interest from Mrs. Hudson beyond the amount stated in the corporate case's Stipulation of Settlement. That motion included a memorandum of law and an Attorney Declaration with two exhibits attached, including the letter referred to in note 4, *supra*.

---

[4] Specifically, the Government asserts that Judge McAvoy wrongly refused to review a letter included with its motion. IRS Special Procedures Agent William Continelli wrote this letter to the corporation's accountant. The parties to the corporate case did not sign the letter, which contained proposed settlement terms to which the IRS agreed and authorized AUSA Diane Cagino to sign a Stipulation of Settlement in the corporate case. The Government relies heavily on a provision of this letter stating that "[w]hen the Stipulation has been signed by the Debtor and the U.S. Attorney, the IRS will adjust the Trust Fund Penalty assessed against the responsible individuals [*i.e.*, the Hudsons] to reflect the $30,838.49 revised amount, plus statutory interest from the date of assessment." *See* Dkt. No. 3 at Pt. 9. Although the Government states that this letter is the operative settlement agreement, the letter states several times that it is a proposal.

In addition to these submissions, the Government also presented a memorandum of law in opposition to Mrs. Hudson's cross-motion and later submitted a supplemental memorandum of law to support its own motion. Judge McAvoy determined that the Government's motion referred to facts outside the pleadings and, therefore, was in the nature of a motion for summary judgment. However, he concluded that there was no foundation for the admission of the Government's exhibits. Moreover, the Government failed to provide an affidavit to support its factual contentions and did not submit the required Statement of Material Facts. Noting that the Government failed to specify the procedural rule by which it requested the Court to affirm its collection action, Judge McAvoy determined that it was appropriate to treat the motion as one for judgment on the pleadings pursuant to Rule 12(c). Therefore, Judge McAvoy ignored all matters beyond the pleadings. *See Hudson v. IRS*, 1:03-CV-172, at Dkt. No. 24 at 7-10.

The Second Circuit has adopted a broad definition of what qualifies as a full and fair opportunity to litigate an issue. Informed by the Restatement (Second) of Judgments, the Second Circuit has even found that a non-party in the original proceeding had a full and fair opportunity to litigate if it "'substantially participate[d] in the control of the presentation . . . .'" *United States v. Davis*, 906 F.2d 829, 833 (2d Cir. 1990) (quotation and other citation omitted). Moreover, the Second Circuit has found that a party had a full and fair opportunity to litigate when the original proceeding was an administrative hearing without an opportunity for discovery or cross-examination.[5] *See Chauffeur's Training Sch., Inc. v. Spellings*, 478 F.3d 117, 132 (2d Cir. 2007)

---

[5] In addition, the Second Circuit (applying New York collateral estoppel principles) has found that a party had a full and fair opportunity to litigate in a prior proceeding in which a state court entered a default judgment against the precluded party, who had not answered the complaint or appeared in the prior proceeding. *See Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir.

(continued...)

(citations omitted).  Therefore, "[w]hen control is exercised and the opportunity to present proof and arguments on the issues litigated is afforded, one has had his day in court and should be bound by the outcome."  *Davis*, 906 F.2d at 833.

In this case, the Government had the opportunity to present its arguments and proof to Judge McAvoy.  However, rather than complying with the relevant summary judgment rules, the Government erred by not specifying the procedural form of its motion, not establishing the admissibility of its documents, not including affidavits to support its factual contentions, and not including the required Statement of Material Facts.  Furthermore, despite these procedural miscues, Judge McAvoy thoroughly considered the Government's arguments concerning the effectiveness of the corporate case's Stipulation of Settlement, including its arguments about the scope of AUSA Cagino's settlement authority.  Therefore, noting that both the Government and the private parties signed the Stipulation of Settlement, Judge McAvoy determined that the Stipulation of Settlement was a binding contract between the Government and the Hudsons and that it explicitly and unambiguously limited the Hudsons' total liability to the stated amount.  *See generally Hudson v. IRS*, 1:03-CV-172, at Dkt. No. 24 at 17-24.  Consequently, even if Judge McAvoy had found the IRS letter admissible, he would not have considered that evidence pursuant to the parol evidence rule.

In sum, the Court finds that the Government exercised control and had an opportunity to present proof and arguments – including three memoranda of law – to support its motion to affirm its collection action against Mrs. Hudson.  *See Davis*, 906 F.2d at 833.  Accordingly, the

---

[5](...continued)
2006).

Court finds that the Government had a full and fair opportunity to litigate the interest issue before Judge McAvoy.

### 2. Is Judge McAvoy's decision sufficiently final to be accorded preclusive effect?

The Government contends that Judge McAvoy's decision in Mrs. Hudson's tax case is not a final decision entitled to preclusive effect. In support of this contention, the Government asserts that, although Judge McAvoy decided the interest issue, his decision remains interlocutory because it did not decide other issues, including the factual question of whether and to what extent the Hudsons had already satisfied the debt.

The concept of finality differs for purposes of appealability and collateral estoppel. *See Lummus Co. v. Commonwealth Oil Ref. Co., Inc.*, 297 F.2d 80, 89 (2d Cir. 1961). For purposes of appealability pursuant to 28 U.S.C. § 1291, a final decision must end the litigation, leaving nothing for the court to do but execute the judgment. *See id.* (quotation omitted). In contrast, finality in the context of collateral estoppel "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id.*; *see also Restatement (Second) of Judgments* § 13 (1982) ("However, for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."). Therefore, federal courts have expanded application of collateral estoppel beyond the traditional context of appealable final judgments to decisions including partial summary judgment, settlement, default judgment, and other pretrial motions. *See* 18A Charles Alan Wright, Arthur

R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 4434 (2d ed. 2002).[6]

In determining finality for purposes of collateral estoppel, the Second Circuit has stated that courts should consider three factors: (1) the nature of the decision, including whether it was explicitly tentative; (2) the adequacy of the hearing; and (3) the opportunity for review.[7] *See Metromedia Co. v. Fugazy*, 983 F.2d 350, 366 (2d Cir. 1992) (citation omitted). The Second Circuit has indicated that the third factor – opportunity for review – is not alone determinative in its decisions finding that the first half of a district court's bifurcated decision considering liability alone can be final notwithstanding the fact that an immediate appeal is not available. *See Metromedia*, 983 F.2d at 366 (citing *In re Fugazy Express, Inc.*, 982 F.2d 769 (2d Cir. 1992); *Zdanok v. Glidden Company, Durkee Famous Foods Division*, 327 F.2d [944,] 955 [(2d Cir. 1964)]) (other citation omitted).

The Court will review the three *Metromedia* factors in turn. First, the nature of the decision was a well-reasoned and comprehensive twenty-five page Decision & Order. Judge McAvoy devoted more than eight pages to considering the effect of the corporate case's Stipulation of Settlement. Moreover, he explicitly considered the Government's arguments

---

[6] *See also Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 392-94 (7th Cir. 1986) (finding a state court's order denying a party's motion to dismiss sufficiently final for collateral estoppel purposes even though there was no written opinion and the decision was not appealable); *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 722 F. Supp. 998, 1007-09 (S.D.N.Y. 1989) (finding that an order granting partial summary judgment would have been sufficiently final for collateral estoppel purposes notwithstanding extraordinary circumstances).

[7] In addition, the Southern District of New York considered finding finality for purposes of collateral estoppel in the following situations: (1) when an appeal is pending; (2) when the party has lost its right to appeal due to the circumstances of the case; (3) when the law does not provide for review; and (4) when the decision decides some matters but litigation continues as to others. *See Sherman v. Jacobson*, 247 F. Supp. 261, 268 (S.D.N.Y. 1965) (citations omitted).

concerning the authority of AUSA Cagino to bind the Government in the Stipulation of Settlement and its arguments concerning abatement of statutory interest.  *See Hudson v. IRS*, 1:03-CV-172, at Dkt. No. 24 at 23-24.  Judge McAvoy did not indicate that his decision on the interest issue was tentative or subject to revision.  Therefore, the Court finds that the first *Metromedia* factor supports a finding of finality.

Second, as noted above, the Government had a full and fair opportunity to litigate the interest issue prior to Judge McAvoy's decision and, thus, had an adequate hearing.  Therefore, the Court finds that the second *Metromedia* factor supports a finding of finality.

Third, due to the procedural posture of Mrs. Hudson's tax case, the Government has not yet had an opportunity to seek review of Judge McAvoy's decision because there has been no final decision for the purpose of appealability.  However, as noted above, finality differs for purposes of appeal and collateral estoppel.  *See Lummus*, 297 F.2d at 89.  Therefore, although this factor weighs against a finding of finality, it is not alone determinative.  *See Metromedia*, 983 F.2d at 366 (citations omitted).

Two of the three *Metromedia* factors support a finding of finality.  Therefore, the Court finds that the litigation of the interest issue has reached the stage where there is "no really good reason for permitting it to be litigated again."  *Lummus*, 297 F.2d at 89.  Accordingly, the Court finds that Judge McAvoy's Decision & Order in Mrs. Hudson's tax case is a final decision eligible for preclusive effect in this case.

### 3.  Is preclusion desirable in this case?

As noted above, the Court has broad discretion to determine whether it will apply

collateral estoppel in particular cases.  *See Parklane*, 439 U.S. at 331.  This case fulfills the elements of federal collateral estoppel as described above.  Moreover, a review of the public policies associated with the application of the doctrine of collateral estoppel indicates that the doctrine is intended to relieve parties from the "cost and vexation" of repetitive litigation of the same issues, conserve judicial resources, prevent inconsistent decisions, encourage reliance on adjudication, and promote comity among courts.  *See Allen*, 449 U.S. at 94, 96 (citations omitted).  This case implicates these concerns because closely allied parties have previously litigated the identical issue and a judge in this district has issued a reasoned decision on the matter.  Therefore, the Court finds that Judge McAvoy's March 25, 2004 Decision & Order, which determined that the Hudsons' total liability (including interest) was limited to $30,838.49 as stated in the corporate case's Stipulation of Settlement, precludes the Government from seeking additional interest in this case.  Accordingly, the Court **AFFIRMS** the Bankruptcy Court's May 16, 2006 Memorandum-Decision and Order to the extent that it prevents the Government from seeking to collect additional interest from Mr. Hudson.

**B.     Attorney's fees**

The Government also appeals the Bankruptcy Court's decision to award Mr. Hudson attorney's fees as a prevailing party pursuant to 26 U.S.C. § 7430 despite the fact that he was a *pro se* litigant.[8]  The Government argues that *pro se* litigants – including *pro se* litigants who are

---

[8] Section 7430 of Title 26 of the United States Code provides for an award of litigation costs, including attorney's fees, to a prevailing party in any court proceeding brought by or against the United States related to the collection or refund of any tax, interest, or penalty. However, it contains an exception when the Government's position was "substantially justified."

(continued...)

-12-

licensed attorneys – are not entitled to attorney's fees because they do not incur any out-of-pocket

expenses.  Moreover, it argues that the Bankruptcy Court should have rejected Mr. Hudson's

request for attorney's fees because the Government's arguments concerning the interest issue

were substantially justified.

In its May 16, 2006 Memorandum-Decision & Order, the Bankruptcy Court noted that the

Second Circuit has not specifically ruled on whether it is appropriate to award attorney's fees to a

*pro se* attorney litigant in a tax refund proceeding.  Therefore, the Bankruptcy Court reviewed the

law in other circuits, noting that the First and Fourth Circuits have found that *pro se* attorney

litigants are not entitled to attorney's fees in the context of tax litigation.  *See* Dkt. No. 1 at Pt. 1

at 8-9 (citations omitted).  The Bankruptcy Court also noted that the Sixth and District of

Columbia Circuits have denied fees to *pro se* attorney litigants in FOIA proceedings.  *See id.* at 9

(citations omitted).  However, the Bankruptcy Court ultimately adopted the reasoning of the Fifth

Circuit in *Cazalas v. United States Dep't of Justice*, 709 F.2d 1051 (5th Cir. 1983).  Specifically,

the Bankruptcy Court relied on its ability to scrutinize Mr. Hudson's fee request for

unreasonableness and determined that awarding fees to a *pro se* attorney litigant would promote a

"'vigorous advocacy'" policy.  *See* Dkt. No. 1 at Pt. 1 at 10.

The Court must first determine the appropriate standard of review.  Mr. Hudson, citing

*Pierce v. Underwood*, 487 U.S. 552, 559-63 (1988), contends that a deferential abuse of

discretion standard should apply.  However, *Pierce* specifies that the deferential standard is

---

[8](...continued)
26 U.S.C. § 7430(c)(4)(B).  Moreover, § 7430 specifies that fees are limited to "reasonable fees
**paid or incurred for the services of attorneys** in connection with the court proceeding . . . ."  26
U.S.C. § 7430(c)(1)(B)(iii) (emphasis added).

applicable when an appellate court reviews a bankruptcy court's decision concerning whether the Government's position was substantially justified.  *See id.* at 558-59.  Regarding a bankruptcy court's conclusions of law in general, the appellate court employs *de novo* review.  *See In re BuddyUSA, Inc. & AbovePeer, Inc.*, Nos. 1:03CV1038, 1:03CV1039, 2007 WL 949655, *2 (N.D.N.Y. Mar. 29, 2007) (citations omitted).  Therefore, the Court will conduct a *de novo* review of the Bankruptcy Court's conclusion of law that attorney's fees are available to *pro se* attorney litigants pursuant to 26 U.S.C. § 7430.

The Second Circuit has "held out the possibility that a *pro se* litigant might be entitled to some fee award if he could show that he had forgone an opportunity to earn 'regular income for a day or more in order to prepare and pursue a *pro se* suit.'"  *Kuzma v. U.S. Postal Serv.*, 725 F.2d 16, 17 (2d Cir. 1984) (concerning a FOIA suit) (quotation omitted).  However, as the Bankruptcy Court noted, the Second Circuit has not specifically ruled on whether prevailing *pro se* attorney litigants are entitled to attorney's fees in tax-related cases pursuant to 26 U.S.C. § 7430.

In the similar context of 42 U.S.C. § 1988, the Supreme Court determined that an award of attorney's fees to a *pro se* attorney litigant is not available.  *See Kay v. Ehrler*, 499 U.S. 432, 438 (1991).  It stated that the word "attorney" implies that an agency or attorney-client relationship existed.  *See id.* at 436 (footnote omitted).  Noting that Congress intended § 1988 to encourage civil rights litigants, the Supreme Court noted that Congress more specifically intended to enable litigants to obtain the assistance of competent counsel.  *See id.* (footnote omitted).  Finally, the Supreme Court considered the disadvantages associated with an attorney representing himself as a litigant.  Most importantly, a *pro se* attorney litigant "is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative

-14-

methods of presenting evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments . . . ."  *Id.* at 437.  The Supreme Court recounted the adage that "'a lawyer who represents himself has a fool for a client,'" and determined that Congress' policy of encouraging prosecution of meritorious claims is best served by creating an incentive to retain counsel in all cases.  *Id.* at 438.

The Second Circuit applied the Supreme Court's reasoning in *Kay* to the attorney's fees provision in the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  *See SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994).  Therefore, it held that *pro se* litigants – attorney or not – cannot recover attorney's fees pursuant to EAJA.[9, 10]  *See id.*  Moreover, the First and Fourth Circuits have decided that *pro se* attorney litigants cannot recover attorney's fees in tax-related cases.  *See McCormack v. United States*, 891 F.2d 24, 25 (1st Cir. 1989); *United States v. McPherson*, 840 F.2d 244, 245 (4th Cir. 1988).  In these pre-*Kay* decisions, both the First and Fourth Circuits noted that their decisions complied with the requirement in § 7430 that a prevailing party could only collect "reasonable fees ***paid or incurred for the services of***

---

[9] In the context of interpreting the exception that applies when the Government's position was "substantially justified," courts have recognized that provisions of EAJA and 26 U.S.C. § 7430 are similar and that cases interpreting EAJA are helpful in understanding § 7430.  *See Weisbart v. United States Dep't of Taxation*, No. CV-97-6020, 2001 WL 1782873, *5 n.3 (E.D.N.Y. Nov. 13, 2001) (citing *Pohl Corp. v. United States*, 29 Fed. Cl. 66, 71 (Fed. Cl. 1993)).

[10] Other Circuits have barred attorney's fees for *pro se* attorney litigants in FOIA cases.  *See, e.g., Burka v. United States Dep't of Health & Human Servs.*, 142 F.3d 1286, 1290 (D.C. Cir. 1998); *Aronson v. United States Dep't of Housing & Urban Dev.*, 866 F.2d 1, 5-6 (1st Cir. 1989).  One Circuit takes the opposing view; however, that decision was *pre-Kay*.  *See Cazalas*, 709 F.2d at 1057.

*attorneys* . . . ." 26 U.S.C. § 7430 (c)(1)(B)(iii) (emphasis added); *see McCormack*, 891 F.2d at

25; *McPherson*, 840 F.2d at 245.

In this case, the Court adopts the reasoning of the Supreme Court in *Kay*, as well as the

First and Fourth Circuits' reasoning in *McCormack* and *McPherson*, respectively.  First, § 7430

requires that a litigant must have "paid or incurred" fees to recover an award of attorney's fees;

however, a *pro se* attorney litigant does not pay out-of-pocket fees or otherwise incur any debts

to retain an attorney.  *See McCormack*, 891 F.2d at 25; *McPherson*, 840 F.2d at 245.  Second, it

is reasonable to suggest that Congress contemplated an agency relationship in allowing attorney's

fees, and no such relationship is present in the case of a *pro se* attorney litigant.  *See Kay*, 499

U.S. at 436 (footnote omitted).  Third, a *pro se* attorney litigant is deprived of the benefit of a

detached third-party's objective legal advice.  *See id.* at 437.  Therefore, the Court finds that a

*pro se* attorney litigant cannot be awarded attorney's fees in this context.  Accordingly, the Court

**REVERSES** the Bankruptcy Court's May 16, 2006 Memorandum-Decision and Order to the

extent that it awards Mr. Hudson attorney's fees pursuant to 26 U.S.C. § 7430.[11]

### IV. CONCLUSION

Accordingly, having reviewed the parties' submissions and the applicable law, and for the

above-stated reasons, the Court hereby

**ORDERS** that the Bankruptcy Court's Memorandum-Decision and Order, dated May 16,

---

[11] Mr. Hudson contends that the Bankruptcy Court could have validly awarded him attorney's fees under its inherent power or pursuant to 28 U.S.C. § 1927.  However, the Bankruptcy Court relied on 26 U.S.C. § 7430, and, to a limited extent, 28 U.S.C. § 2412.  The Bankruptcy Court did not mention its inherent power or 28 U.S.C. § 1927. Therefore, the Court need not address Mr. Hudson's contention for the first time on appeal.

2006, is **AFFIRMED** to the extent that it precludes the Government from seeking interest

beyond the amount specified in the corporate case's Stipulation of Settlement; and the Court

further

     **ORDERS** that the Bankruptcy Court's Memorandum-Decision and Order, dated May 16,

2006, is **REVERSED** to the extent that it awards Mr. Hudson attorney's fees pursuant to 26

U.S.C. § 7430; and the Court further

     **ORDERS** that the Clerk of the Court enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: August 24, 2007
     Syracuse, New York

                              Frederick J. Scullin, Jr.
                              Senior United States District Court Judge

-17-